1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10                        **Fresno Division**

11

12   LATWAHN McELROY,                          Civil No.    1:08cv1221-JTM-MDD
     CDCR #P-71922,
13
                                    Plaintiff,   **ORDER:**
14
                                                 **1)  SUA SPONTE DISMISSING
15                                               DEFENDANT CALIFORNIA
                                                 DEPARTMENT OF CORRECTIONS**
16          vs.                                  **PURSUANT TO 28 U.S.C. § 1915A(b)**

17                                               **AND**

18   R. COX; B. COPE; R. ROBLES;                 **2)  DENYING DEFENDANTS'
     P. ROCHA; T. ACOSTA; S. STINNETT;           MOTION FOR SUMMARY
19   M. HANKINS, CALIFORNIA                       JUDGMENT PURSUANT
     DEPARTMENT OF CORRECTIONS,                   TO FED.R.CIV.P. 56(c)**
20
                                    Defendants.  **[ECF No. 63]**
21

22

23                                  **I.**

24                        **PROCEDURAL BACKGROUND**

25          Latwahn McElroy ("Plaintiff"), a prisoner currently incarcerated at California State

26   Prison, Sacramento ("CSP-SAC"), in Represa, California, is proceeding pro se and *in forma*

27   *pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff, who claims

28   various "medical restrictions" requiring the use of a wheelchair and cane, alleges that while he

1    was incarcerated at Kern Valley State Prison ("KVSP") in February 2007, Defendants Cox,

2    Robles, Stinnett, Acosta, Rocha, and Cope all either used excessive force against him, or failed

3    to intervene while the others used excessive force.  (Amend. Compl. [ECF No. 33] at 3-4.)

4    Plaintiff further alleges Defendant Hankins, a Licensed Vocational Nurse, witnessed Defendant

5    Cope "slam [him] against a wall," "falsified documents" and "withheld information and

6    treatment of [his] bruised and swollen eye and cheek ... and back of [his] head."  (*Id.* at 4.)

7    Plaintiff seeks "injunctive and declaratory relief declaring [his] medical restrictions were

8    obstructed,"[1] as well as $40,000 from each defendant in "actual" and punitive damages.  (*Id.*

9    at 3.)

10        Currently before the court is a Motion for Summary Judgment filed pursuant to

11   FED.R.CIV.P. 56 on behalf of KVSP officials Cox, Robles, Stinnett, Acosta, Rocha, and Cope

12   ("Defendants") [ECF No. 63].  Because Plaintiff is incarcerated and proceeding without

13   counsel, the court has notified him of the requirements for opposing summary judgment

14   pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154

15   F.3d 952 (9th Cir. 1998) (en banc) [ECF No. 66].[2]  On May 6, 2011, Plaintiff filed an

16   Opposition [ECF No. 70], and on May 17, 2011, Defendants filed their Reply [ECF No. 71].

17                                              **II.**

18                                    **PROPER PARTIES**

19        As a preliminary matter, the court notes Plaintiff includes the California Department of

20   Corrections ("CDC") as a Defendant in his Amended Complaint; however, because he alleges

21   no "plausible" claim for relief as to this Defendant, the court did not direct the U.S. Marshal

22   to effect service upon the CDC when it ordered service as to the remaining individual

23   Defendants.  *See* March 19, 2010 Order [ECF No. 36] at 4; *Ashcroft v. Iqbal*, __ U.S. __, 129

24   _____

25   [1]  Plaintiff's transfer from KVSP to CSP-SAC mooted Plaintiff's claims for injunctive relief.  *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir.1995) (inmate's transfer from an institution while his claims

26   are pending will generally moot any claims for injunctive relief relating to the transferring prison's policies).

27   [2]  *Klingele* and *Rand* require the district court to ensure that a pro se prisoner has been given "fair notice ... of the requirements and consequences of a summary judgment motion."  *County of Los*

28   *Angeles v. Beltran*, 514 F.3d 946, 952 (9th Cir. 2008) (citing *Rand*, 154 F.3d at 960-61).

S. Ct. 1937, 1949 (2009) (a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (affirming dismissal of California Department of Corrections as a state agency entitled to Eleventh Amendment immunity) (citing *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) ("[A]gencies of the state are immune [under the Eleventh Amendment] from private damage actions or suits for injunctive relief brought in federal court.")).  Thus, to the extent Plaintiff's Amended Complaint names the CDC as a Defendant, it is dismissed sua sponte pursuant to 28 U.S.C. § 1915A(b)(1), (2).  *See Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (pursuant to Prison Litigation Reform Act, a court may dismiss a prisoner's complaint seeking redress from a government entity "as soon as practicable" if it "is frivolous, malicious," or "fails to state a claim upon which relief may be granted," or seeks relief against defendants who are immune).

Plaintiff's Amended Complaint also names M. Hankins as an individual Defendant, and the court *did* direct the U.S. Marshal to effect service of Plaintiff's Amended Complaint and summons upon Hankins at the same time it ordered service upon the remaining Defendants. *See* March 19, 2010 Order at 4.  However, because Hankins did not waive personal service as did the other individual Defendants pursuant to FED.R.CIV.P. 4(d), the U.S. Marshal personally served her–but not until March 24, 2011 [ECF No. 65].  On April 8, 2011, Defendant Hankins joined Defendants Cox, Robles, Stinnett, Acosta, Rocha and Cope in filing an Answer to Plaintiff's Amended Complaint [ECF No. 67], but she has *not* joined in Defendants' previously filed Motion for Summary Judgment, nor has she filed a separate Motion for Summary Judgment on her own behalf.

Accordingly, Plaintiff's allegations against Defendant Hankins, none of which have been previously dismissed and none of which are subject of the Motion for Summary Judgment currently pending, remain properly before the court.

/ / /

/ / /

# III.

## FACTUAL ALLEGATIONS

On February 5, 2007, Defendant Cox, a Correctional Sergeant at KVSP, directed staff in Facility B to conduct "mass cell searches." (Defs.' Ex. D in Supp. of Mot. for Summ J. [ECF No. 63-7] at 18, CDCR 837A-1 "Crime/Incident Report" Log No. KVP-FBP-07-02-0084.) As part of these searches, Defendants Stinnett and Robles ordered Plaintiff, who was assigned Cell B-113, and who was using a wheelchair due to paralysis in his right leg, to remove his shirt and boxers so they could conduct an unclothed body search. (*Id.*; *see also* Pl.'s Dep. at 10.)

Plaintiff removed his shirt and boxers and passed them through the food port to Defendant Robles. (Pl.'s Dep. at 12, Defs.' Ex. D at 3, 8, 18). However, Plaintiff refused to stand, bend, squat and cough, claiming he was "not able," and had a medical "chrono" "stating that [he] [was] not required to do that because of ... [his] disability." (Amend. Compl. at 3; Pl.'s Dep. at 10, 23, 30.)

Defendants Stinnett and Robles then "called the Sergeant," [Cox] who "asked [Plaintiff] a bunch of questions," and inquired whether Plaintiff could either "lay over the lower bunk," so they could "complete the anal cavity review" or "hold onto the bunk," so that he could "raise [his] feet and try to squat." (Pl.'s Dep. at 10, 13, 32; Defs.' Ex. D at 3, 18, Defs.' Ex. 1 [ECF No. 63-12], CDC 115 Rules Violation Report Log No. FB-07-02-001, at 2.) Plaintiff told Cox he "need[ed] his cane," which was outside the closed cell door. (Pl.'s Dep. at 13; Defs.' Ex. 1 at 2.) Because Plaintiff "was being cooperative," Cox ordered the Control Booth officer to open Plaintiff's cell door. (Defs.' Ex. 1 at 2; Pl.'s Dep. at 13.)

Defendant Booth entered the cell and handed Plaintiff his cane so that he could "assist him in performing an unclothed body search." (Defs.' Ex. F ("Cox Decl.") at ¶ 3.) Plaintiff claims Cox "walked into the cell," and "stood very close" while Plaintiff stood, "walked towards his bunk" and "raise[d] his feet." (Pl.'s Dep. at 13-14; Defs.' Ex. D at 3, 18, 27.) Plaintiff then claims to have "partially bent," but "guess[ed] it wasn't good enough." (Pl.'s Dep. at 14, 32-33.)

/ / /

4

1    In their CDCR 837-C "Crime Incident Reports" completed afterward, Defendants Robles

2    and Stinnett both claim that once Plaintiff used the cane Cox had given him to stand, he walked

3    back toward his bunk, but "refused to squat and cough." (Defs.' Ex. D at 3, 8.) Similarly, in

4    the CDC 115 Rules Violation Report Sgt. Cox completed afterward, he too claims Plaintiff used

5    the cane to "assist himself to his feet," and "started to bend over his lower bunk," but then "stood

6    straight up and faced [Cox]," and stated, "I'm not bending over nothing." (Defs.' Ex. 1 at 2.)

7    Defendant Cox then claims he ordered Plaintiff to "sit back down in his wheelchair," so

8    that they "would take him to the clinic." (*Id.*) Plaintiff, however, asserts that when he turned

9    back toward Cox and away from his bunk, "the wheelchair was out of the cell," and his medical

10   chrono or "doctor's note" had been removed from the wall of his cell. (Amend. Compl. at 3;

11   Pl.'s Dep. at 14, 27, 29, 33, 44, 81-82.) Plaintiff claims at this point he "felt very, very

12   cautious," "knew something was strange," and that Cox "started hollering and screaming," and

13   told him to "give them the cane back." (Pl.'s Dep. at 14, 27.) Plaintiff claims he "handed the

14   cane back," and Cox "grabbed it," and gave it to the other officers outside of his cell, but that

15   after Cox continued to "walk[]around" inside the cell, in front of Plaintiff with his "balled fists,"

16   and "got into ... a boxer stance, like a 1920 boxer, like it was ... a joke." (*Id.* at 14, 27, 34-35,

17   59-60; Amend. Compl. at 3.) Plaintiff describes Cox's actions as "horseplaying," but felt that

18   "at the same time he [was] putting [his] life in danger," and "acting like he was going to punch

19   [him] ... if [he] said something." (Pl.'s Dep. at 14, 48, 54-55.) Plaintiff admits he bent his knees

20   and "brac[ed] [him]self," felt "real angry," "depressed" and like he was "trapped in a cage," and

21   "wanted to ... beat the hell out of [Cox]" for "calling [him] retarded" and insulting him. Instead,

22   however, Plaintiff claims he "just stood there," "ignor[ed] [Cox]" and "didn't even look at him,"

23   but at some point did put his hands up in front of his face as one of the female officers [Stinnett]

24   "maced" him in the eyes, face, neck and chest, while "hollering and screaming [at him] to get

25   down." (Pl.'s Dep. at 35, 39, 45, 48, 52, 60-62.)

26   Cox's CDC 115 Rules Violation Report, however, states that once Plaintiff turned from

27   the bunk, he "stood straight up and faced him," that Plaintiff's cane was "no longer touching the

28   floor[,]" and that he "had taken a defensive stance," by "holding the cane in his right hand

5

1   approximately 1/3 from the bottom," with his "right hand clinched tight around the shaft."

2   (Defs.' Ex. 1 at 2.)   Cox then claims that Plaintiff "swung his cane from left to right" and

3   "str[uck] [him] in the forehead."   (*Id.* at 3; *see also* Defs.'s Exs. D at 27; Cox Decl. ¶ 3.)

4   Defendant Stinnett also observed Plaintiff take "a step toward Sgt. Cox," and "strike Sergeant

5   Cox in the head with his cane."  (Defs.' Ex. E ["Stinnett Decl."] ¶ 3; Defs.' Ex D at 8.)  Cox

6   claims he then "grabbed [Plaintiff's] right hand (the hand in which he was holding his cane),

7   ordered him to get down, and pulled the cane from his grasp."  (Cox Decl. ¶ 4.)  As Cox

8   "attempted to throw [Plaintiff's] cane outside his cell, so that he would not be able to grab it

9   again, [Plaintiff] punched [Cox] in [the] ribs," and "took a 'boxer's stance,' holding both of his

10  fists clinched near his face."  (*Id.* ¶¶ 5, 6.)

11      Stinnett claims she also "gave verbal commands to [Plaintiff] to get down with negative

12  results."  (Defs.' Ex. D at 8; Cox. Decl. ¶ 7; Stinnett Decl. ¶¶ 4-5.)  When Plaintiff "ignored

13  [Stinnett's] orders to get down, [she] pepper-sprayed him in the facial area" to "prevent him

14  from further attacking Sergeant Cox, [herself], or other correctional staff."  (Stinnett Decl. ¶¶ 6-

15  7; Cox Decl. ¶ 9.) Cox then claims Plaintiff ignored several orders to get down, and "took a step

16  toward [him]."  (Cox. Decl. ¶¶ 10-12.)  Cox also "pepper-sprayed [Plaintiff] in his facial area,"

17  in an attempt to "stop [his] assault and control the situation.)  (*Id.* ¶¶ 13-15.)  After Cox also

18  began to pepper-spray, "[Plaintiff] grabbed [Cox's] uniform at the chest area and tackled [him]

19  to the ground."  (*Id.* ¶ 16.)

20      Defendant Robles and Cox together then "used physical holds to gain control of

21  [Plaintiff] and place him in handcuffs."  (Cox. Decl. ¶ 17; Robles Decl. ¶ 4.)  Both Cox and

22  Robles assert they used "physical holds" only because Plaintiff resisted their efforts to cuff him,

23  and the cuffs were the "safest" way to prevent Plaintiff from any further attack and to "control

24  the situation."  (Cox. Decl. ¶¶ 18-19; Robles Decl. ¶¶ 5-6.)  Stinnett, Cox, and Robles all deny

25  using pepper-spray or physically restraining or forcibly cuffing Plaintiff "out of anger, malice,

26  or for any improper purpose."  (Cox. Decl. ¶¶ 19-23; Robles Decl. ¶¶ 6-10; Stinnett Decl. ¶¶ 9-

27  12.)

28  //

6

1    For his part, however, Plaintiff claims once Stinnett pepper-sprayed him he "lost his

2  balance," fell back on his bunk, and "kept scooting farther to the back of the cell," but both

3  Stinnett and Cox "kept macing" even though Plaintiff claims he "was nowhere near them and

4  ... couldn't harm them." (Pl.'s Dep. at 62-63.)   Plaintiff also claims he stood up and was "trying

5  to grab some underwear" which was under his bunk because he was naked, but the officers

6  continued to "scream" conflicting orders at him, and he "slipped in the mace" and was "face

7  down" and "proned out" while Cox and Robles "kept saying put your hands behind your back"

8  and accused him of "not following orders." (Pl.'s Dep. at 65-66, 67-68.)   Plaintiff further

9  alleges Robles was "saying he was going to shoot [him]." (*Id.* at 67, 95.)

10    At this point, Plaintiff claims he was lying on the floor "for maybe a minute" when

11  "somebody" stepped on his left hand," with a boot, "crushed" all four index fingers, "put one

12  handcuff on one hand," and then "punched [him] in the head repeatedly," so that he "had to turn

13  his head to the side" to keep his nose and lips from "pounding on the ground" while "somebody"

14  who Plaintiff believes was Cox straddled [his] back and repeatedly punched [him] in the lower

15  back]" "a good 10-14 times" in "rapid fire [succ]ession" [un]til[] [he] just ran out of breath."

16  (Pl.'s Dep. at 66, 69-74, 117.)   Plaintiff also claims Cox "seemed like he was trying to pull

17  [Plaintiff's] shoulder out of [his] socket," and "was acting like [Plaintiff] was making a problem

18  refusing." (*Id.* at 71, 117-118.)   Plaintiff, however, asserts he "wasn't refusing to handcuff up,"

19  and that he was "just crying and stuff" until the escort officer arrived and Plaintiff "felt like

20  somebody had [to] push[] ... Cox off of [him]." (*Id.* at 74.)

21    Plaintiff specifically denies hitting Cox with his cane, and claims "there is no way" he

22  could because he was standing at the back of the cell and "it wouldn't reach." (Pl.'s Dep. at

23  141-142.)   Plaintiff further denies punching Cox or being "resistive." (*Id.* at 142.)

24    Once Cox and Robles cuffed Plaintiff, Officers Acosta and Rocha reported to Plaintiff's

25  cell in response the personal alarm which had been activated by the Control Booth Officer.

26  (Defs.' Ex. D at 10.)   Acosta and Rocha "escorted [Plaintiff] to the patio area and allowed him

27  to decontaminate from the pepper spray exposure with fresh air and water." (Defs.' Ex. B

28

1  "Acosta Decl." ¶ 8; Ex. D at 5.)  Defendant Acosta also claims to have "watched" as Cox and

2  Robles "use[d] physical holds to gain control of [Plaintiff] and place him in restraints" inside

3  his cell.  (Acosta Decl. ¶ 7.)  Acosta "did not believe there was an excessive risk to [Plaintiff's]

4  safety."  (Id.)[3]

5       In the CDC 837-C Crime/Incident Report he completed afterwards, Defendant Rocha

6  claimed Plaintiff was already "on the floor [of his cell] in handcuffs" when Cox instructed him

7  and Acosta to escort Plaintiff to the B-Facility Program area for decontamination.  (Defs.' Ex.

8  D at 5.)  Rocha also reported Plaintiff "walked a distance of approximately 600 to 700 feet ...

9  without assistance."  (Id.)

10      Plaintiff claims, however, that Acosta and Rocha "slammed him outside the building

11  door," gave him a towel, and placed him in ankle chains.  (Amend. Compl. at 4.)  Acosta and

12  Rocha thereafter "forced [him] to walk," "pulled" and "lifted" him forward, forced him to "hop[]

13  on [his] left leg,"and refused a wheelchair even though Plaintiff's "leg doesn't touch the

14  ground."  (Pl.'s Dep. at 75, 77-78.)  Plaintiff further alleges that while he was "forced to stumble

15  and hobble," he "tripped over the chain."  (Amend. Compl. at 4; Pl.'s Dep. at 78.)  Either Rocha

16  or Acosta "got mad because [Plaintiff] tripped," accused him of "doing it on purpose," and then

17  "punched" him in the sternum.  (Amend. Compl. at 4; Pl.'s Dep. at 78-80, 116.)  When Plaintiff

18  "cried out[,] T. Acosta and/or P. Rocha then decked him under the [right] eye causing significant

19  swelling."  (Amend. Compl. at 4; P.'s Dep. at 78-79.)  When Plaintiff asked, "Why [are you]

20  hitting me, I done [sic] nothing to you," he alleges either Rocha or Acosta replied, "[Y]ou busted

21  the sergeant's head.  You can't just get away with that, you can't put your hands on the

22  sergeant."  (Pl.'s Dep. at 78-79.)

23      Once outside the Program area, Rocha and Acosta claim they "placed [Plaintiff] on his

24  knees," and "hosed [him down] with copious amounts of cold running water for approximately

25  fifteen minutes."  (Defs.' Ex. D at 5-6; Pl.'s Dep. at 81.)  Plaintiff, however, alleges he was

26

27     [3] At some point after he was extracted from his cell, Program Sergeant Sather reported a "spit mask was placed on [Plaintiff] because he was spitting and drooling."  (Defs.' Ex. D at 7; Pl.'s Dep. at 142. )  Sather also "removed a wooden cane from [Cell] B3-113 and carried it with [him] to the program office as [he] supervised [Plaintiff's escort," "decontamination" and "placement into holding cell #6." (Id.)

8

"slammed face down" into the blacktop, and told "a bunch of insulting and sarcastic stuff," like: "This is what happens to people that do stuff to – to sergeants or – or people [who] don't listen." (Pl.'s Dep. at 76.)  At the time, Plaintiff was still naked, had his hands cuffed behind his back, and shackles around his ankles.  (*Id.* at 76-77.)  After Plaintiff was "left facing the breeze" for ten additional minutes, Acosta and Rocha escorted him to a holding cell inside the Program Office where he could be medically examined.  (Defs.' Ex. D at 6; Acosta Decl. ¶ 9.)

Once inside the holding cage, Plaintiff alleges his handcuffs were "switched" and "the escorts [Acosta and Rocha] left."  (Pl.'s Dep. at 108.)  Plaintiff claims he then "tried to talk to [Defendant] Cope," who had placed "B1-ASU handcuffs" on him while he was still inside the holding cage.  (*Id.* at 107-09.)  Once he was re-cuffed, Cope opened the holding cell door and told Plaintiff to "kneel" on or "straddle" a wooden chair.  (*Id.* at 109-10.)  Plaintiff claims Cope "was saying he didn't want to talk ... and went foul at the mouth."  (*Id.* at 108.)

Plaintiff avers Defendant Hankins, a Licensed Vocational Nurse, was "watching," and "staring ... like she [wa]s going to document [Plaintiff's] swollen facial area, but she never did." (*Id.* at 109.)  Plaintiff specifically claims Hankins "failed to complete the [CDCR Form] 7219 injury report," "falsified" documentation of his "abrasions to the right shoulder, back and knee area," and "withheld information and treatment of [Plaintiff's] bruised and swollen eye," "cheek area," and the "back of [his] head."  (Amend. Compl. at 4; Pl.'s Dep. at 112.)  The CDCR Form 7219 "Medical Report of Injury or Unusual Occurrence" dated February 5, 2007 and signed by "M. Hankins, LVN" indicates exposure to O/C (pepper) spray, decontamination, and abrasions, scratches, and dried blood on Plaintiff's upper right shoulder, lower back, and left knee, but no injury to Plaintiff's face.  (Defs.' Ex. D at 12; Def.'s Ex. G.)  Hankins declared Plaintiff "ambulatory" and "medically cleared [him] for Ad/Seg placement/return to custody."  (*Id.*)  A similar CDCR Form 7219 completed by Hankins on the same day reports Cox suffered from abrasions, scratches, swelling, and "active bleeding" to the head, forehead, and upper left eye and cheek.  (Def.'s Ex. D at 11.)

Plaintiff next claims Cope "grabbed [him]" as Hankins watched, "slammed [him] against the wall," "pushed" his face and body into the wall with his elbow, "and started ... telling

1    [Plaintiff] what he didn't care about and what he was going to do if [Plaintiff] got out of line."

2    (Amend. Compl. at 4; Pl.'s Dep. at 110-12, 119.)

3        Afterward, Defendant Rocha "prepare[d] Plaintiff for contraband watch."  (Defs. Ex. D

4    at 6.)  Finally, Plaintiff was charged with battery on a peace officer in violation of Cal. Code

5    Regs., tit. 15 § 3005(c), and the matter was referred to the Kern Valley District Attorney for

6    possible felony prosecution.  (*See* Defs.' Ex. 1, CDC 115 Rules Violation Report, Log No. FB-

7    07-02-001; Defs.' Ex. D at 16.)  On July 27, 2007, the Kern County District Attorney declined

8    to prosecute, but on September 8, 2007, Plaintiff was found guilty in CDC 115 prison

9    disciplinary proceedings of battery on a peace officer with a weapon, assessed 360 days' loss

10   of credit, 90 days' loss of television, canteen and visiting privileges, and was referred to an

11   Institutional Classification Committee for possible SHU assessment.  (Defs.' Ex. 1 at 10.)

12       According to C. Kearns, a Case Records Supervisor employed by the California

13   Department of Corrections and Rehabilitation at CSP-SAC, "there are no court orders to return

14   the forfeiture of [Plaintiff's] credits," or to "reverse any guilty finding" based on CDCR 837-A1

15   Crime Incident Report Log No. KVP-FBP-07-02-0084 which led to Plaintiff's disciplinary

16   conviction.  (Defs.' Ex. H, Kearns Decl. ¶ 5.)

17       As a result of the February 5, 2007 incident, Plaintiff claims to have suffered memory

18   loss, migraines, nightmares, and emotional distress, as well as "permanent mobility impairment"

19   at the hip and foot, a sciatic nerve injury, and chronic lower back pain.  (Amend. Compl. at 4-5;

20   Pl.'s Dep. 97-106.)

21                                         **IV.**

22                    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

23   **A.      FED.R.CIV.P. 56 Standard of Review**

24       Summary judgment is proper where there is no genuine issue of material fact in dispute

25   and the moving party has shown it is entitled to judgment as a matter of law.  *Bias v. Moynihan*,

26   508 F.3d 1212, 1218 (9th Cir. 2007) (citing FED.R.CIV.P. 56(c)).

27                 Under summary judgment practice, the moving party always bears
                   the initial responsibility of informing the district court of the basis
28                 for its motion, and identifying those portions of "the pleadings,
                   depositions, answers to interrogatories, and admissions on file,

                                        10

1    together with the affidavits, if any," which it believes demonstrate
2    the absence of a genuine issue of material fact.

3  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56(c)); *Zoslaw v.*

4  *MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  The "purpose of summary judgment

5  is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need

6  for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

7  (citations omitted).

8         If the moving party meets its initial responsibility, the burden then shifts to the

9  nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.

10  *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218.  To avoid summary judgment, the non-moving

11  party is "required to present significant, probative evidence tending to support h[is] allegations,"

12  *Bias*, 508 F.3d at 1218 (citations omitted), and must point to some evidence in the record that

13  demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in

14  the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]."  *Reese v.*

15  *Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56;

16  *Celotex*, 477 U.S. at 323); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

17  "To defeat a summary judgment motion ..., the non-moving party 'may not rest upon the mere

18  allegations or denials' in the pleadings.  FED.R.CIV.P. 56(e).  Instead, he "must establish the

19  existence of a genuine factual dispute on the basis of admissible evidence; bare allegations

20  without evidentiary support are insufficient to survive summary judgment."  *Estate of Tucker*

21  *ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008).

22         **B.    Defendants' Arguments**

23         Defendants seek summary judgment on the following grounds:  1) Plaintiff's excessive

24  force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520

25  U.S. 641 (1997) (Defs.' Mem. of P&A's in Supp. of Mot. for Summ. J. [ECF No. 63-1] at 8-11);

26  2) Plaintiff's excessive force claim fails because "uncontroverted evidence shows that Cox,

27  Stinnett, and Robles did not act with malice or any intent to harm [him] (*id.* at 11-13);

28  3) Plaintiff's failure-to-protect claim fails because Defendants Acosta and Rocha "were not

1   deliberately indifferent toward [him] when they watched Sergeant Cox and Officer Robles use

2   physical holds to gain control of [Plaintiff] and place him in restraints" (*id.* at 13-15); and

3   4) Cox, Acosta, Rocha, Robles, and Stinnett are all entitled to qualified immunity as to both

4   Plaintiff's excessive force and failure-to-protect claims (*id.* at 15-18).

5       Plaintiff opposes on all grounds, and claims "under penalty of perjury" that there was no

6   need for anyone to enter his cell, that he was not refusing orders and/or exhibiting any assaultive

7   behavior, that he was maced without warning or consideration of his disability, and that he did

8   not resist or threaten any officer, but instead was "bum rushed," punched, and slammed without

9   cause.  (Opp'n at 1, 7, 8-13.)  In Reply, Defendants ask the court to "disregard" Plaintiff's

10  Opposition entirely because it does not comply with Local Rule 260(b), which requires any party

11  opposing summary judgment to reproduce the moving party's Statement of Undisputed Facts and

12  admit or dispute each one, including with each denial a citation to the record in support.  (Defs.'

13  Reply [ECF No. 71] at 2.)[4]

14      **1.   *Heck* Bar**

15      Defendants first claim that Plaintiff's excessive force claims against Sgt. Cox and

16  Officers Stinnett and Robles are barred by the Supreme Court's decisions in *Heck* and *Balisok*

17  because   an award for damages would necessarily imply the invalidity of his disciplinary

18  conviction for assault of a peace officer pursuant to CAL. CODE REGS., tit. 15 § 3005(c).  (Defs.'

19  Mem. of P&As in Supp. of Summ. J. [ECF No. 63-1] at 4-11.)  Because Plaintiff's disciplinary

20  conviction has not been invalidated and his forfeited behavioral credits have not been restored,

21  ────────────────

22      [4]  Pursuant to E.D. Cal. Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes
    of the movant's statement of facts must be supported with citations to evidence. *See* L.R. 260(b) (parties

23  opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial
    a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission

24  or other document relied upon in support of that denial").  While Plaintiff has not technically complied
    with Local Rule 260(b), he does offer his own "Statement of Disputed Facts," as part of his Opposition,

25  and his opposing brief contains factual allegations within his personal knowledge and is sworn under
    penalty of perjury pursuant to 28 U.S.C. § 1746.  (Pl.'s Opp'n [ECF No. 70] at 1, 13, 14-15.)  Moreover,

26  Plaintiff's Deposition testimony is sworn [ECF No. 64], as is his Amended Complaint [ECF No. 33 at
    3], which may be treated as an opposing affidavit to the extent that it sets forth admissible facts (1) within

27  Plaintiff's personal knowledge and not based merely on his belief and (2) about which he is competent
    to testify.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399

28  1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*,
    754 F.2d 1420, 1423 (9th Cir. 1985).  The court will consider only those facts and evidence that are
    relevant to resolving Defendants' Motion.

1  Defendants Cox, Stinnett and Robles argue his excessive force claims are "fundamentally

2  inconsistent" with his disciplinary conviction, and thus, must be brought in a habeas action, and

3  not pursuant to the Civil Rights Act, 42 U.S.C. § 1983.  (Defs.'s Mem. of P&A's at 9.)

4       "[A] state prisoner cannot use a § 1983 action to challenge the 'fact or duration of his

5  confinement,' because such an action lies at the 'core of habeas corpus.'" *Simpson v. Thomas*,

6  528 F.3d 685, 693 (9th Cir. 2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973).)

7  Thus, where a § 1983 action seeking damages alleges constitutional violations that would

8  necessarily imply the invalidity of a conviction or sentence, the prisoner must first establish that

9  the underlying sentence or conviction has already been invalided on appeal, by a habeas petition,

10 or terminated in his favor via some other similar proceeding.  *Heck*, 512 U.S. at 483-87.  This

11 "favorable termination" rule applies to prison disciplinary proceedings, if those proceedings

12 resulted in the loss of good-time or behavior credits.  *Balisok*, 520 U.S. at 646-48 (holding that

13 claim for monetary and declaratory relief challenging validity of procedures used to deprive

14 prisoner of good-time credits is not cognizable under § 1983); *see also Wilkinson v. Dotson*, 544

15 U.S. 74, 81-82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior

16 invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the

17 prisoner's suit (state conduct leading to conviction or internal prison proceedings) if success in

18 that action would necessarily demonstrate the invalidity of confinement or its duration"

19 (emphasis omitted)).  Stated another way, a § 1983 claim is barred if the "plaintiff could prevail

20 only by negating 'an element of the offense of which he has been convicted.'"  *Cunningham v.*

21 *Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (citing *Heck*, 512 U.S. at 487 n.6).  However,

22 when the § 1983 claim does not necessarily implicate the underlying disciplinary action (or

23 criminal conviction), it may proceed.  *See Muhammed v. Close*, 540 U.S. 749, 754-55 (2004).

24      Uncontroverted evidence in the record shows that after investigation and a disciplinary

25 hearing conducted on September 8, 2007, Plaintiff was convicted of battery on a peace officer

26

27

28

1   [Cox] with a deadly weapon in violation of CAL. CODE REGS., tit. 15 § 3005(c),[5] and assessed

2   a 360 day loss of credits which have not been restored.  *See* Defs.' Exs. H, Stearns Decl. ¶ 5;

3   Ex. 1 [ECF No. 63-12] at 2-10.

4        In several cases, the Ninth Circuit has applied *Heck*'s favorable termination requirement

5   to consider, and sometimes preclude, excessive force claims brought pursuant to 42 U.S.C.

6   § 1983.  For example, in *Cunningham*, the case upon which Defendants rely, the Ninth Circuit

7   found § 1983 excessive force claims filed by a prisoner who was convicted of felony murder and

8   resisting arrest were barred by *Heck* because his underlying conviction required proof of an

9   "intentional provocative act" which was defined as "not in self defense."  312 F.3d at 1152.  A

10  finding that police had used unreasonable force while effecting the plaintiff's arrest, the Court

11  held, would "call into question" the validity of factual disputes which had necessarily already

12  been resolved in the criminal action against him.  *Id.* at 1154.  However, in *Smith v. City of*

13  *Hemet*, 394 F.3d 689 (9th Cir. 2005), the Ninth Circuit considered whether excessive force

14  allegations of a prisoner who pled guilty to resisting arrest pursuant to CAL. PENAL CODE

15  § 148(a)(1) were also barred by *Heck* and found that "Smith's § 1983 action [wa]s not barred

16  ... because the excessive force may have been employed against him subsequent to the time he

17  engaged in the conduct that constituted the basis for his conviction."  *Id.* at 693.  Under such

18  circumstances, the Ninth Circuit held Smith's § 1983 action "neither demonstrate[d] nor

19  necessarily impl[ied] the invalidity of his conviction."  *Id.*; *see also Sanford v. Motts*, 258 F.3d

20  1117, 1120 (9th Cir. 2001) ("[I]f [the officer] used excessive force subsequent to the time

21  Sanford interfered with [the officer's] duty, success in her section 1983 claim will not invalidate

22  her conviction.  *Heck* is no bar."); *cf. Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th

23  Cir. 2011) (holding that a conviction for resisting arrest under CAL. PENAL CODE § 148(a)(1)

24  does not "bar a § 1983 claim for excessive force under *Heck* [if] the conviction and the § 1983

25  claim are based on different actions during 'one continuous transaction'").

26  _____

27       [5] At the time Plaintiff was found guilty, CAL. CODE REGS., tit. 15 § 3005(c) provided that
     "[i]nmates shall not willfully commit ... a violent injury to any person or persons ...."  Section 3005(c)

28  was re-numbered in 2008 as CAL. CODE REGS., tit. 15 § 3005(d)(1), which still provides that "[i]nmates
     shall not willfully commit or assist another person in the commission of an assault or battery to any
     person or persons, nor attempt or threaten the use of force or violence upon another person."

1  Here, unlike the defendants in *Cunningham*, Defendants Cox, Stinnett, and Robles, have

2  not shown that Plaintiff's excessive force claims against them are necessarily inconsistent with

3  his adjudication of guilt for battery on a peace officer.  Thus, this court cannot say that

4  Plaintiff's excessive force claims "necessarily imply the invalidity" of his battery conviction

5  under CAL. CODE REGS., tit. 15 § 3005(c).  *Heck*, 512 U.S. at 487.  The factual context in which

6  the force was used is disputed.  Thus, even though Plaintiff was found guilty of willfully

7  committing a violent injury upon a peace officer (Cox) by either hitting him with his cane or

8  tackling him to the ground, Sgt. Cox and Officers Stinnett and Robles could, if Plaintiff's

9  testimony is believed, nevertheless be found liable for responding "maliciously and sadistically"

10  with the intent to cause him harm.  *See Hudson v. McMillian*, 503 U.S. at 1, 7 (1992); *Simpson*

11  *v. Thomas*, No. 2:03-cv-0591 MCE GGH, 2009 WL 1327147 at *4 (E.D. Cal. May 12, 2009)

12  (success on the plaintiff's Eighth Amendment excessive force claim would not necessarily

13  invalidate his battery conviction pursuant to CAL. CODE REGS., tit. 15 § 3005(c) because "[e]ven

14  if Defendant acted unlawfully by using excessive force, Plaintiff could still have been guilty of

15  battery"); *accord Gipbsin v. Kernan*, No. CIV S-07-0157 MCE EFB P, 2011 WL 533701 at *5-6

16  (E.D. Cal. 2011); *Gabalis v. Plainer*, No. CIV S-09-0253-CMK, 2010 WL 4880637 at *7 (E.D.

17  Cal. 2010) ("[I]t is possible for defendants to have used excessive [force] and for plaintiff to

18  have attempted to assault a correctional officer.  Thus, success on plaintiff's civil rights claims

19  would not necessarily imply that the guilty finding and resulting loss of good-time credits is

20  invalid." (emphasis added)); *Candler v. Woodford*, No. C 04-5453 MMC, 2007 WL 3232435

21  at *7 (N.D. Cal. Nov. 1, 2007) ("[B]ecause defendants have not shown that a finding of their use

22  of excessive force would necessarily negate an element of the battery offense, the Court cannot

23  conclude that plaintiff's claims are barred under *Heck*.").

24  For these reasons, the court DENIES Defendant's Motion for Summary Judgment on

25  grounds that Plaintiff's excessive force claims against Defendants Cox, Stinnett and Robles are

26  barred by *Heck*.

27  / / /

28  / / /

1

2.      **Excessive Force**

2

Next, Defendants Cox, Stinnett, and Robles seek summary judgment as to Plaintiff's

3

excessive force claims, arguing that "the uncontroverted evidence shows that [they] did not act

4

with malice or any intent to harm [Plaintiff]." (Defs.' Mem. of P&As in Supp. of Summ. J.

5

[ECF No. 63-1] at 7-9.)[6]

6

The "core judicial inquiry," when a prisoner alleges the excessive use of force under the

7

Eighth Amendment, is "not whether a certain quantum of injury was sustained, but rather

8

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

9

and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 1, 7 (1992); *see also Whitley*

10

*v. Albers*, 475 U.S. 312, 319-321, (1986).  "When prison officials maliciously and sadistically

11

use force to cause harm," the Supreme Court has recognized, "contemporary standards of

12

decency always are violated ... whether or not significant injury is evident.  Otherwise, the

13

Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman,

14

inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9; *see also Wilkins*

15

*v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010) ("An inmate who is gratuitously beaten by guards

16

does not lose his ability to pursue an excessive force claim merely because he has the good

17

fortune to escape without serious injury.")

18

Thus, "[i]n determining whether the use of force was wanton and unnecessary," the court

19

must  "evaluate the need for application of force, the relationship between that need and the

20

amount of force used, the threat reasonably perceived by the responsible officials, and any

21

efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal

22

quotation marks and citations omitted).

23

"The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does

24

not end it." *Hudson*, 503 U.S. at 7; *Wilkins*, 130 S.Ct. at 1178 ("This is not to say that the

25

absence of serious injury is irrelevant to the Eighth Amendment inquiry.") (internal quotations

26

omitted)).  Instead, "the extent of injury suffered by an inmate is one factor that may suggest

27

28

_____

[6]  Defendants Acosta, Rocha, and Cope do *not* seek summary judgment as to Plaintiff's of  excessive force claims against them. *See* Pl.'s Amend. Compl. at 4; Pl.'s Dep. at 75-80; 110-112, 119.

1  'whether the use of force could plausibly have been thought necessary' in a particular situation."

2  *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).  "The extent of injury may also

3  provide some indication of the amount of force applied."  *Id.*  "Injury and force, however, are

4  only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins,* 130 S. Ct. at

5  1178.

6         Thus, under these standards, "[n]ot every push or shove, even if it may later seem

7  unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."

8  *Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  For,

9  "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain' ... constitutes cruel

10  and unusual punishment forbidden by the Eighth Amendment."  *Whitley*, 475 U.S. at 319

11  (internal quotations omitted).

12        Finally, courts are "generally cautious" about granting summary judgment when

13  motivation and intent are at issue.  *Foster v. Arcata Assoc., Inc.,*772 F.2d 1453, 1459 (9th Cir.

14  1985).  Because a determination of state of mind usually entails drawing factual inferences, and

15  because a summary judgment motion requires that the court view the evidence in the light most

16  favorable to the nonmoving party, summary judgment is often not warranted.  *See White v.*

17  *Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) ("Where the defendant's intent is at issue, summary

18  judgment is appropriate 'only if all reasonable inferences defeat the plaintiff's claims.'" (internal

19  citation omitted)).

20        Here, uncontroverted evidence in the record shows that Plaintiff initially complied with

21  Defendants Cox, Stinnett, and Robles' orders when he removed his clothes and indicated that

22  he would attempt to comply further by using his cane for support, lifting his feet and partially

23  bending.  (*See* Pl.'s Dep. at 10-14; Defs.' Ex. D at 3, 18, 27; Defs.' Ex. 1 at 2.)  Up to this point,

24  both Plaintiff and Defendant Cox agree he was "being cooperative." (Defs.' Ex. 1 at 2; Pl.'s

25  Dep. at 13.)

26        The testimony then differs, however, as to whether Plaintiff outright refused lawful orders

27  or simply was physically unable to bend and squat as Cox, Robles, and Stinnett commanded;

28  whether Plaintiff "handed the cane back" to Cox as requested; and whether Plaintiff took a

1   defensive stance and used it to strike Cox in the forehead and then tackle him to the ground.

2   (Pl.'s Dep. at 14, 27; Defs.' Ex. D at 3, 8, 27; Defs.' Ex. 1 at 2; Cox Decl. ¶ 3; Stinnett Decl.

3   ¶ 3.)  After that, the sworn testimony before the court also diverges as to whether Cox, Stinnett,

4   and Robles used pepper spray and only the "physical holds" necessary to maintain order and

5   restore security, (Cox. Decl.  ¶¶ 18-24; Stinnett Decl. ¶¶ 7-12; Robles Decl.  ¶¶ 5-8), or whether

6   they instead, as Plaintiff alleges, "kept macing" even after he was "nowhere near them" (Pl.'s

7   Dep. at 62-63), threatened to "shoot" him (*id.* at 67, 95), "crushed" the fingers on his hand after

8   he was already "prone" and compliant on the floor (*id.* at 65-66), "punched him in the head

9   repeatedly," tried to "pull [his] shoulder out of [his] socket," and, while straddling him, punched

10  him in the lower back in "rapid fire succession" 10-14 times (*id.* at 65-74).

11      Thus, based on this material contradictory testimony, the court finds genuine issues of

12  material fact exist as to whether Defendants Cox, Stinnett, and Robles used force in a good-faith

13  effort to maintain or restore order, or instead, used force with a "malicious" and "sadistic" intent

14  to do Plaintiff harm.  *Hudson*, 503 U.S. at 7. A rational trier of fact could believe either that

15  Defendants Cox, Stinnett, and Robles exceeded the amount of force necessary to gain Plaintiff's

16  compliance, *or* that they responded reasonably by tempering their responses to a perceived or

17  actual threat, and using only that amount of force necessary to restore order.  *Id.*; *see also*

18  *Anderson*, 477 U.S. at 255 (noting that at summary judgment, "[c]redibility determinations, the

19  weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions,

20  not those of a judge").

21      Accordingly, the court DENIES Defendants' Motion for Summary Judgment as to

22  Plaintiff's excessive force claims against Defendants Cox, Stinnett, and Robles.

23      **3.     Failure to Protect/Intervene**

24      Defendants Acosta and Rocha also seek summary judgment as to Plaintiff's claims that

25  they failed to protect him from Defendants Cox and Rocha as they used "physical holds" to cuff

26  Plaintiff inside  Cell 113, or that they acted with deliberate indifference to a serious risk to his

27  safety during his escort from Cell 113 to outside the Program area where he was decontaminated

28

and eventually placed in a holding cell to await medical treatment.  (Defs.' Mem. of P&As in Supp. of Summ. J at 13-15.)

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates."  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").  In fact, the Supreme Court has specifically held that this duty requires prison officials to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted).  "Protecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986).

Thus, to show that a prisoner has been subjected to cruel and unusual punishment by an officer's failure to protect him, he must point to evidence in the record which shows that the alleged deprivation was objectively "sufficiently serious," *i.e.*, that the conditions he faced posed a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297 (internal quotation marks, emphasis and citations omitted); *see also Hudson*, 503 U.S. at 5, 8.

In a failure-to-protect case, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.  Prison officials display a deliberate indifference to an inmate's well-being when they know of and consciously disregard an excessive risk of harm to that inmate's health or safety. *Farmer*, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  Thus, "deliberate indifference" entails something more than mere negligence, but may be satisfied with proof of something less than acts or omissions "for the very purpose of causing harm," or that a particular

19

1   official "acted or failed to act believing that harm actually would befall an inmate; it is enough

2   that the official acted or failed to act despite his knowledge of a substantial risk of serious

3   harm." *Farmer*, 511 U.S. at 842. "Whether a prison official had the requisite knowledge of a

4   substantial risk" may be inferred if the prisoner produces evidence sufficient to show that the

5   risk was "obvious." *Id.*

6       Here, evidence before the court shows that Defendant Acosta "saw" and "watched" as

7   Cox and Robles used "physical holds to gain control of [Plaintiff] and place him in restraints"

8   inside Cell 113. (Acosta Decl. ¶ 7; Defs.' Ex. D at 24.) Defendant Rocha, for his part, has not

9   proffered any sworn testimony as to his role in Plaintiff's escort; however, in the CDC Form

10  837-C Crime/Incident Staff Report he submitted afterward, Rocha reported that when he

11  responded to the personal alarm activated in Facility B3 and arrived at Cell 113, he "looked

12  inside and saw [Plaintiff] on the floor in handcuffs." (Defs.' Ex. D at 5.) It is in this report that

13  Rocha also claims Plaintiff "walked a distance of 600 to 700 feet ... without assistance." (*Id.*)

14  Acosta and Rocha claim, based on what "they observed" inside Plaintiff's cell, neither of them

15  were "aware of an excessive risk to [Plaintiff's] safety," nor were they "deliberately indifferent

16  toward [Plaintiff] when they watched Sergeant Cox and Officer Robles use physical holds to

17  gain control of [Plaintiff] and place him in restraints." (Defs.' P&As in Supp. of Summ. J at 14.)

18      However, as discussed above, genuine issues of material fact exist as to whether Stinnett,

19  Cox, and Robles used excessive force when they attempted to coerce Plaintiff's compliance with

20  a strip search and pepper-sprayed, punched, and attempted to forcibly cuff him. If a jury were

21  to find Cox, Stinnett, and Robles did so "maliciously and sadistically," then they could also find,

22  based on the same evidence, that Acosta and Rocha acted with deliberate indifference to a

23  serious or obvious risk to Plaintiff's safety when they observed Cox and Robles' actions but

24  failed to intervene. *See Farmer*, 511 U.S. at 837; *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th

25  Cir. 1995) (to prevail on summary judgment, the moving party must demonstrate that no genuine

26  issue of material fact exists to show that they had a "reasonable opportunity to intervene").

27      For these reasons, Defendants Acosta and Rocha's Motion for Summary Judgment as to

28  Plaintiff's Eighth Amendment failure-to-protect claims is DENIED.

1    / / /

2         **5.      Qualified Immunity**

3         Finally, Defendants Cox, Stinnett, Robles, Acosta, and Rocha all seek summary judgment

4    on grounds that they are entitled to qualified immunity.  (Defs.' Mem. of P&As in Supp. of

5    Summ. J. at 15-17.)

6         "Government officials enjoy qualified immunity from civil damages unless their conduct

7    violates 'clearly established statutory or constitutional rights of which a reasonable person would

8    have known.'"  *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v.*

9    *Fitzgerald*, 457 U.S. 800, 818 (1982)).  When presented with a qualified immunity defense, the

10   central questions for the court are:  (1) whether the facts alleged, taken in the light most

11   favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or

12   constitutional right;  and (2) whether the right at issue was "clearly established" at the time it is

13   alleged to have been violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although *Saucier*

14   originally required courts to answer these questions in order, the U.S. Supreme Court has

15   recently held that "while the sequence set forth there is often appropriate, it should no longer be

16   regarded as mandatory."  *Pearson v. Callahan*, __U.S. __, 129 S. Ct. 808, 818  (2009).

17        If the court finds that Plaintiff's allegations do not make out a statutory or constitutional

18   violation, "there is no necessity for further inquiries concerning qualified immunity."  *Saucier*,

19   533 U.S. at 201.  Similarly, if the court determines that the right at issue was not clearly

20   established at the time of the defendant's alleged misconduct, the court may end further inquiries

21   concerning qualified immunity without determining whether the allegations in fact make out a

22   statutory or constitutional violation.  *Pearson*, 129 S. Ct. at 818.

23        In this case, genuine issues of material fact exist as to whether Defendants Cox, Stinnett,

24   Robles, Acosta, and Rocha violated Plaintiff's Eighth Amendment rights by either using

25   excessive force against him or failing to intervene while their fellow officers used excessive

26   force.  This conclusion is based not merely on Plaintiff's claims of improper motive, but instead

27   on the "specific, nonconclusory factual allegations," proffered in his sworn Amended Complaint

28   and Deposition testimony which, if presumed true, could establish both that Defendants acted

1   "maliciously" and "sadistically" or that they acted with  deliberate indifference to a serious risk

2   to his safety. *Jeffers*, 267 F.3d at 907 (citing *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998)).

3    Thus, "the next, sequential step is to ask whether [either] right was clearly established."

4   *Saucier*, 533 U.S. at 201.

5        A right is "clearly established" when its contours are "sufficiently clear that a reasonable

6   official would understand that what he is doing violates that right." *Id.* at 202.  This does not

7   mean "that an official action is protected by qualified immunity unless the very action in

8   question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Instead,

9   "in the light of pre-existing law[,] the unlawfulness must be apparent."  *Id.*  The "salient

10  question" is whether the state of the law at the time gives officials "fair warning" that their

11  conduct is unconstitutional.  *Id.* at 740.  "This inquiry ... must be undertaken in light of the

12  specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 202;

13  *Crowell v. City of Coeur D'Alene*, 339 F.3d 828, 846 (9th Cir. 2003).  Indeed, "'[o]fficials can

14  still be on notice that their conduct violates established law even in novel factual

15  circumstances.'" *Hope*, 536 U.S. at 741.  In order to find that the law was clearly established,

16  then, the court "need not find a prior case with identical, or even 'materially similar,' facts."

17  *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1136-37 (9th Cir. 2003) (quoting

18  *Hope,* 536 U.S. at 741).

19       The Ninth Circuit has specifically noted that "a prison guard's use of excessive force was

20  clearly established" by 1992 when the Supreme Court held that the "settled rule [is] that 'the

21  unnecessary and wanton infliction of pain  ... constitutes cruel and unusual punishment

22  forbidden by the Eighth Amendment.'"  *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir.

23  2003) (quoting *Hudson*, 503 U.S. at 5).  Indeed, *Hudson* itself  held unconstitutional the

24  unjustified use of physical force upon a non-resistant prisoner.  *See Hudson*, 503 U.S. at 7-10

25  (holding that guards violated Hudson's Eighth Amendment rights when they gratuitously

26  punched and hit him, causing only minor injuries, while escorting him between prison facilities);

27  *see also Martinez*, 323 F.3d at 1184 (finding qualified immunity improperly granted to officers

28  who allegedly beat an inmate during a cell extraction, despite his lack of resistance); *McRorie*

1  *v. Shimoda*, 795 F.3d 780, 784 (9th Cir. 1986) (finding Eighth Amendment violation when

2  prisoner was assaulted while not resisting).[7]

3      In fact, the Ninth Circuit has explicitly rejected a prison official's claim to qualified

4  immunity under circumstances similar to those present here.  In *Watts v. McKinney*, 394 F.3d

5  710 (9th Cir. 2005), the Court found that an inmate's declaration under oath, attached to his

6  opposition to summary judgment, claiming that a correctional officer while "escort[ing] plaintiff

7  to a holding cell ... without warning slammed plaintiff['s] face into the wall," and "kicked [him]

8  in his penis and several times in his back while he was lying on the cell floor with cuffs on and

9  his hands behind his back," was more than sufficient to survive Defendants' claims of qualified

10  immunity.  *Id.* at 711.  The Court specifically noted that "to suppose that any reasonable person,

11  let alone a trained prison officer, would not know that kicking a helpless prisoner's genitals was

12  cruel and unusual conduct is beyond belief.  The Supreme Court did not create a catalogue of

13  all the acts by which cruel and sadistic purpose to harm another [under *Hudson*] would be

14  manifest; but if it had, such act[s] would be near the top of the list.  The case must go to trial."

15  *Id.*

16      The same is true for Plaintiff's failure-to-protect and/or intervene claims as to Defendants

17  Rocha and Acosta.  Ninth Circuit law existing as early as 1995 made clear "that a prison official

18  can violate a prisoner's Eighth Amendment rights by failing to intervene."  *Robins*, 60 F.3d at

19  1441 (citing *Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994) ("A failure of prison

20  officials to act in such circumstances suggests that the officials actually wanted the prisoner to

21  suffer the harm.");  *Buckner v. Hollins*, 983 F.2d 119, 123 (8th Cir. 1993) (finding prison

22  guard's "failure to intervene in order to stop [Plaintiff's] beating ... would provide an ample

23  basis for a jury to conclude that [the guard] ... violated Buckner's Eighth Amendment rights.")).

24  _____

25      [7]  The Ninth Circuit has similarly found, in the case of a pretrial detainee alleging excessive force,
    that "by 1985, the law of this Circuit would have put a reasonable officers on notice that an 'unprovoked
26  and unjustified attack" violates clearly established constitutional rights.  *Lolli v. County of Orange*, 351
    F.3d 410, 421-22 (9th Cir. 2003) (citing *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991)).
27  Indeed, in *Lolli*, the Ninth Circuit found the genuine issues of facts as to the amount of force used against
    a pretrial detainee who claimed to have been "handcuffed before the beating stopped and ... kicked, hit
28  or twisted about 10 times after he was cuffed," precluded the district court's finding of qualified
    immunity.  *Id.* at 412, 415, 421-22.

1    Thus, at the time Defendant Rocha and Acosta arrived at Plaintiff's cell on February 5, 2007

2    in order to escort him to the Program office and oversee his decontamination, and Defendant

3    Acosta claims to have "watched" as Cox and Robles "use[d] physical holds to gain control of

4    [Plaintiff] and place him in restraints" inside his cell, (Acosta Decl. ¶ 7), "the law regarding

5    prison officials' duty to take reasonable measures to protect inmates from violence ... was

6    'clearly established.'" *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001) (quoting *Farmer*,

7    511 U.S. at 833).  It was well-settled, at the time, that an official's deliberate indifference to the

8    risk that a prisoner would be harmed violates the Eighth Amendment.  *See id.*

9         Therefore, this court finds that no reasonable official in Defendants Acosta and Rocha's

10   position could believe that, viewing the facts in the light most favorable to Plaintiff, failing to

11   intervene while Defendant Robles "threatened to shoot" and either Cox and/or Robles "crushed"

12   Plaintiff's hand with his boot and punched him repeatedly in the head and lower back while he

13   was already prone on the ground, crying and non-resistant, was lawful.  *See* Pl.'s Dep. at 65-74,

14   95, 117-18; *Hope*, 536 U.S. at 741.

15        Accordingly, Defendants' Motion for Summary Judgment based on qualified immunity

16   as to both Plaintiff's excessive force and his failure-to-protect claims is DENIED.

17                                              **V.**

18                              **CONCLUSION AND ORDER**

19        Based on the foregoing, the court hereby:

20        1)    DISMISSES Defendant California Department of Corrections sua sponte pursuant

21   to 28 U.S.C. § 1915A(b); and

22        2)    DENIES Defendants Cox, Stinnett, Robles, Acosta, Rocha, and Cope's Motion for

23   Summary Judgment pursuant to FED.R.CIV.P. 56(c) [ECF No. 63].

24        **IT IS SO ORDERED**.

25   DATED:  June 23, 2011

26                                        _____
                                          Hon. Jeffrey T. Miller
27                                        United States District Judge

28

                                          24