1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11    LATWAHN McELROY,                    1:08-cv-01221-LJO-GSA-PC

12              Plaintiff,                **PRETRIAL ORDER**
                                          (Resolves Docs. 108, 114.)
13        v.
                                          **Motions in Limine Deadline: May 28, 2012**
14    ROY COX, B. COPE, R. ROBLES,
      PAUL ROCHA, THOMAS ACOSTA,
15    SHERRI STINNETT, and M. HANKINS,    **Jury Trial:**          **June 19, 2012 at 8:30 a.m.**
                                                                   **in Courtroom 4 (LJO)**
16              Defendants.

17    _____/

18        This action, brought pursuant to 42 U.S.C. § 1983, proceeds with the Amended Complaint

19    filed by plaintiff Latwahn McElroy ("Plaintiff") on February 1, 2010, on Plaintiff's Eighth

20    Amendment claims:  against defendants Correctional Officer ("C/O") Roy Cox, C/O B. Cope, C/O

21    R. Robles, C/O Paul Rocha, C/O Thomas Acosta, and C/O Sherri Stinnett, for excessive force;

22    against defendants C/O Paul Rocha and C/O Thomas Acosta for failure to protect Plaintiff; and

23    against defendant LVN M. Hankins for denial of medical care.[1]  (Doc. 33.)

24        Plaintiff is a prisoner presently incarcerated at High Desert State Prison ("HDSP") in

25    Susanville, California.  The events at issue in the Amended Complaint allegedly occurred at Kern

26    Valley State Prison ("KVSP") in Delano, California, while Plaintiff was incarcerated there.  Plaintiff

27    _____

28        [1]Defendant California Department of Corrections was dismissed *sua sponte* from this action by the Court on
      June 23, 2011, based on Plaintiff's failure to state a claim against this defendant.  (Doc. 80.)

                                              1

alleges that on February 7, 2007, during an unclothed body search, Defendants Stinnett, Cox, and/or Robles sprayed him with mace, and after he fell to the floor naked, defendants Robles, Stinnett and/or Acosta punched Plaintiff in the back of the head over seventeen times, and defendant Cox began punching Plaintiff in the lower back.  Plaintiff was then lifted by three officers and the escorting officers Acosta and Rocha who pulled and forced Plaintiff to hop on one leg, slammed him outside the building door, placed him in ankle chains and a towel, lifted him up and forced him to stumble and hobble over seven hundred feet on one leg.  When Plaintiff tripped over the chain, defendants Rocha and Acosta decked him in the sternum and under his eye.  Defendant Nurse Hankins falsified documents and withheld treatment for his bruised and swollen eye, cheek area, and back of head.  Plaintiff was forced to hobble to Ad-Seg, where C/O Cope slammed Plaintiff against a wall, striking the same eye.  Plaintiff suffered memory loss, migraines, emotional distress, permanent mobility impairment of his hip and foot, a sciatic nerve injury, and lower back pain. Plaintiff seeks monetary damages as relief.

The parties have submitted pretrial statements.  On May 10, 2012, the undersigned held a telephonic trial confirmation hearing.  The Court now issues a Pretrial Order.

**I.    Jurisdiction and Venue**

The Court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.

**II.    Jury Trial**

Both parties request a trial by jury.   Trial has been scheduled for June 19, 2012 , at 8:30 a.m. in Courtroom 4.

**III.    Facts and Evidentiary Issues**

The parties have stipulated to the following Undisputed Facts.[2]

**A.    Undisputed Facts**

1.    On February 5, 2007, Plaintiff was incarcerated at Kern Valley State Prison (KVSP), in Delano, California.

---

[2]The parties stipulated to these Undisputed Facts, which were set forth in Section III of Defendants' Pretrial Statement, on the record at the telephonic trial confirmation hearing held on May 10, 2012.

2.      On February 5, 2007, Defendants were employed by the California Department of Corrections and Rehabilitation (CDCR).

3.      On February 5, 2007, Defendant Cox directed correctional staff to conduct mass cell searches of the inmates in Plaintiff's housing unit.

4.      Defendants Stinnett and Robles arrived at Plaintiff's cell to conduct an unclothed body search of Plaintiff.

5.      When Stinnett and Robles arrived at Plaintiff's cell, Plaintiff was in a wheelchair.

6.      Plaintiff complied with the unclothed body search by removing his shirt and boxer shorts and handing them to Defendant Robles through the food port.

7.      Plaintiff also handed his cane to Defendant Robles through the food port.

8.      Defendant Robles ordered Plaintiff to stand up from his wheelchair so that he could cough and squat, but Plaintiff refused.

9.      Defendants Robles and Stinnett summoned Defendant Cox to Plaintiff's cell.

10.     When Defendant Cox arrived at Plaintiff's cell, he ordered Plaintiff to perform an unclothed body search.

11.     Plaintiff asked Defendant Cox to provide him with his cane to assist him in performing the unclothed body search.

12.     Defendant Cox ordered the Control Booth Officer to open Plaintiff's cell door.

13.     After the Control Booth Officer opened Plaintiff's cell door, Defendants Cox and Robles provided Plaintiff with his cane.

14.     Defendants Stinnett and Cox pepper-sprayed Plaintiff, who was standing at that point.

15.     Once Plaintiff was on the ground, Defendants Robles and Cox used physical holds to gain control of Plaintiff and place him in restraints.

///

///

3

16. After Plaintiff was on the ground, Defendants Acosta and Rocha arrived at Plaintiff's cell and watched Defendant Robles and Cox gain control of Plaintiff and place him in restraints.

17. After Defendants Cox and Robles placed Plaintiff in restraints, Defendants Acosta and Rocha escorted Plaintiff to a patio area where he was allowed to decontaminate from the pepper-spray exposure, and then escorted him to a holding cell so he could be medically-examined.

18. Fifteen minutes after Defendants Acosta and Robles escorted Plaintiff to a holding cell, a licensed vocational nurse examined Plaintiff and noted the following injuries–abrasions to his right shoulder, lower back, and left knee.

**B.**   **Disputed Facts**

1. Whether, after Defendants Cox and Robles provided Plaintiff with his cane, Plaintiff refused to perform the unclothed body search and hit Cox in the forehead with his cane.

2. Whether, after Defendants Cox and Robles provided Plaintiff with his cane, Plaintiff performed the unclothed body search and returned his cane to Cox.

3. Whether, after Plaintiff returned his cane to Defendant Cox, Cox faced Plaintiff and stood in a boxer's stance.

4. Whether, after Defendant Cox stood in a boxer's stance, Defendant Robles or Stinnett pepper-sprayed Plaintiff.

5. Whether, after Plaintiff hit Defendant Cox with his cane, Plaintiff refused Defendant Robles's repeated orders to get down.

6. Whether, after Plaintiff refused Defendant Robles's repeated orders to get down, Defendant Cox grabbed the cane from Plaintiff, at which point Plaintiff punched Cox in the ribs.

7. Whether Defendant Stinnett pepper-sprayed Plaintiff to prevent Plaintiff from attacking Defendant Cox.

///

4

8.  Whether, after Defendant Stinnett pepper-sprayed Plaintiff, Plaintiff refused Defendant Cox's repeated orders to get down.

9.  Whether, after Plaintiff refused Defendant Cox's repeated orders to get down, he took a step toward Cox.

10. Whether, after Plaintiff took a step toward Defendant Cox, Cox used pepper spray to prevent Plaintiff from further attacking him.

11. Whether, after Defendant Cox pepper-sprayed Plaintiff, Plaintiff grabbed Cox around his chest area and tackled him to the ground.

12. Whether, after Plaintiff tacked Defendant Cox, Defendants Robles and Cox used physical holds to gain control of Plaintiff, stop Plaintiff's assault on Cox, and place Plaintiff in restraints.

13. Whether, when Defendants Acosta and Rocha watched Defendants Cox and Robles use physical holds to gain control of Plaintiff and place him in restraints, Acosta and Rocha did not believe there was any excessive risk to Plaintiff's safety.

14. Whether, after Plaintiff was on the ground, Defendants Cox, Robles, or Stinnett punched Plaintiff in the head and back.

15. Whether, while escorting Plaintiff, Defendants Acosta and Rocha pulled and forced Plaintiff to hop, stumble and hobble over seven hundred feet on one leg.

16. Whether, when Defendants Acosta and Rocha escorted Plaintiff to the program patio, they slammed Plaintiff on the ground and punched Plaintiff in the sternum and eye

17. Whether Defendants Cox and Stinnett's sole motivation for pepper-spraying Plaintiff was to stop Plaintiff's assault on Cox and control the situation.

18. Whether, when Defendants Cox and Stinnett pepper-sprayed Plaintiff and used physical holds to gain control of Plaintiff and place him in restraints, they intended to hurt Plaintiff.

19.   Whether, in using physical holds to gain control of Plaintiff and place him in restraints, Defendants Cox and Robles's sole motivation was to stop Plaintiff's assault on Cox and control the situation.

20.   Whether Defendant Hankins falsified a CDC 7219, documenting Plaintiff's injuries, following the February 5, 2007 incident.

21.   Whether, on February 5, 2007, Plaintiff possessed a medical chrono prohibiting him from squatting and coughing as part of an unclothed body search.

22.   Whether, on the afternoon of February 5, 2007, while Defendant Cope escorted Plaintiff to a holding cell for placement in administrative segregation, Defendant Hankins watched Cope push Plaintiff face-first into a wall, causing Plaintiff's right eye to hit the wall.

23.   Whether the force that Defendants Cox, Robles, and Stinnett used against Plaintiff was applied maliciously and sadistically in order to cause Plaintiff harm.

24.   Whether the force that Defendants Cox, Robles, and Stinnett used against Plaintiff was applied in a good faith effort to maintain or restore discipline.

25.   Whether the force that Defendants Cox, Robles, and Stinnett used against Plaintiff was reasonable and minimal.

26.   Whether Defendants Acosta, Rocha, and Cope used any force against Plaintiff.

27.   The extent of Plaintiff's injuries following the January 17, 2006 escort.

**C.   <u>Disputed Evidentiary Issues</u>**

Plaintiff fails to identify a medical expert. The essential functions of a medical expert in a deliberate indifference to medical needs claim are to identify the extent of the plaintiff's injuries, lay a foundation for documentary evidence regarding the plaintiff's medical condition, and identify how Defendants' actions caused the plaintiff's injuries. Without a medical expert, Plaintiff cannot offer any proper opinion testimony as to his injuries, nor can he lay a proper foundation for any

documentary evidence regarding his medical condition.  Fed. R. Evid. 702.  Defendants, therefore object to Plaintiff offering any testimony regarding documentary evidence of his medical condition and causation for his alleged injuries.

### D.   Special Factual Information

Not applicable.

## IV.   Relief Sought

Plaintiff seeks $40,000 compensatory damages from each defendant, and an unspecified amount in punitive damages and damages for psychological distress.  Defendants pray for judgment in their favor with Plaintiff taking nothing.  Defendants shall seek attorney's fees if successful at trial.

## V.   Points of Law

### A.   Imposition of Liability Under Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

Section 1983 plainly requires that there be an actual connection or link between the actions of Defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'"  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "[T]he 'requisite causal connection can be established not only by some

1  kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts

2  by others which the actor knows or reasonably should know would cause others to inflict the

3  constitutional injury.'" Id. at 743-44.  An officer can be held liable for failing to intercede only if

4  he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir.

5  2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

6  **B.   Excessive Force**

7  "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

8  Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v.

9  McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . .

10  . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks

11  and citations omitted).  The malicious and sadistic use of force to cause harm always violates

12  contemporary standards of decency, regardless of whether or not significant injury is evident. Id.

13  at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force

14  standard examines de minimis uses of force, not de minimis injuries)).  However, not "every

15  malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.

16  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from

17  constitutional recognition de minimis uses of physical force, provided that the use of force is not of

18  a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations

19  omitted).

20  "[W]henever prison officials stand accused of using excessive physical force in violation of

21  the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

22  in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

23  Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper

24  to evaluate the need for application of force, the relationship between that need and the amount of

25  force used, the threat reasonably perceived by the responsible officials, and any efforts made to

26  temper the severity of a forceful response." Id.  (internal quotation marks and citations omitted).

27  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end

28  it." Id.

8

1       **C.    Failure to Protect**

2       The Eighth Amendment protects prisoners from inhumane methods of punishment and from

3   inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).

4   Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with

5   food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S.

6   825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have

7   a duty to take reasonable steps to protect inmates from physical abuse. Id. at 833; Hearns v. Terhune,

8   413 F.3d 1036, 1040 (9th Cir. 2005).

9       To establish a violation of this duty, the prisoner must establish that prison officials were

10  "deliberately indifferent to a serious threat to the inmates's safety." Farmer, 511 U.S. at 834.  The

11  question under the Eighth Amendment is whether prison officials, acting with deliberate

12  indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future

13  health ... .'" Id. at 843 (*citing* Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court

14  has explained that "deliberate indifference entails something more than mere negligence ... [but]

15  something less than acts or omissions for the very purpose of causing harm or with the knowledge

16  that harm will result." Id. at 835. The Court defined this "deliberate indifference" standard as equal

17  to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

18      The deliberate indifference standard involves both an objective and a subjective prong. First,

19  the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second,

20  subjectively, the prison official must "know of and disregard an excessive risk to inmate health or

21  safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).  To prove

22  knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very

23  obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis

24  v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

25      **D.    Denial of Medical Care**

26      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

27  must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096

28  (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)).  The two-part

1  test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

2  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or

3  the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was

4  deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059

5  (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136

6  (9th Cir. 1997) (en banc) (internal quotations omitted)).   Deliberate indifference is shown by "a

7  purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused

8  by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).   Deliberate indifference may be

9  manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or

10  it may be shown by the way in which prison physicians provide medical care." Id.   Where a prisoner

11  is alleging a delay in receiving medical treatment, the delay must have led to further harm in order

12  for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at

13  1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

14        "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060

15  (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from

16  which the inference could be drawn that a substantial risk of serious harm exists,' but that person

17  'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official

18  should have been aware of the risk, but was not, then the official has not violated the Eighth

19  Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada,

20  290 F.3d 1175, 1188 (9th Cir. 2002)).   "A showing of medical malpractice or negligence is

21  insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060.

22  "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v.

23  Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

24        "A difference of opinion between a prisoner-patient and prison medical authorities regarding

25  treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

26  1981) (internal citation omitted).  To prevail, plaintiff "must show that the course of treatment the

27  doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this

28  ///

1  course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90

2  F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

3      **E.      Qualified Immunity**

4          Government officials enjoy qualified immunity from civil damages unless their conduct

5  violates "clearly established statutory or constitutional rights of which a reasonable person would

6  have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  Thus, if a

7  constitutional violation occurred, prison officials are entitled to qualified immunity if they acted

8  reasonably under the circumstances. <u>Millender v. County of Los Angeles</u>, 564 F.3d 1143, 1148 (9th

9  Cir. 2009).  "Qualified immunity balances two important interests - the need to hold public officials

10  accountable when they exercise power irresponsibly and the need to shield officials from harassment,

11  distraction, and liability when they perform their duties reasonably," <u>Pearson v. Callahan</u>, 129 S.Ct.

12  808, 815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the

13  law," <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

14          In resolving a claim of qualified immunity, courts must determine whether, taken in the light

15  most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so,

16  whether the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156

17  (2001); <u>McSherry v. City of Long Beach</u>, 560 F.3d 1125, 1129-30 (9th Cir. 2009).  While often

18  beneficial to address in that order, courts have discretion to address the two-step inquiry in the order

19  they deem most suitable under the circumstances. <u>Pearson</u>, 129 S.Ct. at 818 (overruling holding in

20  <u>Saucier</u> that the two-step inquiry must be conducted in that order, and the second step is reached only

21  if the court first finds a constitutional violation); <u>McSherry</u>, 560 F.3d at 1130.

22          The inquiry "must be undertaken in light of the specific context of the case, not as a broad

23  general proposition . . . ." <u>Saucier</u>, 533 U.S. at 201.  "[T]he right the official is alleged to have

24  violated must have been 'clearly established' in a more particularized, and hence more relevant,

25  sense:  The contours of the right must be sufficiently clear that a reasonable official would

26  understand that what he is doing violates that right." <u>Id.</u> at 202 (citation omitted).

27  ///

28  ///

11

1       **F.**    **Damages Issues**

2         **1.**    **Nominal Damages**

3        If the jury finds the plaintiff has proved his claim for violation of his constitutional rights,

4 "nominal damages must be awarded 'as a symbolic vindication of [the plaintiff's] constitutional

5 right' whether or not the constitutional violation causes any actual damage." <u>George v. City of Long</u>

6 <u>Beach</u>, 973 F.2d 706, 708 (9th Cir. 1992) (quoting <u>Floyd v. Laws</u>, 929 F.2d 1390, 1401 (9th Cir.

7 1991)); <u>Schneider v. County of San Diego</u>, 285 F.3d 784, 794 (9th Cir. 2002).  "If the jury finds a

8 constitutional violation, an award of nominal damages is mandatory, not permissive," <u>Floyd</u>, 929

9 F.2d at 1402-03, and the amount of actual damages a jury chooses to award, if any at all, is irrelevant

10 to the plaintiff's entitlement to nominal damages, <u>Schneider</u>, 285 F.3d at 794-95; <u>Floyd</u> at 1402-03.

11         **2.**    **Punitive Damages**

12        Punitive damages are available in section 1983 actions.  <u>Dang v. Cross</u>, 422 F.3d 800, 807

13 (9th Cir. 2005) (citations omitted).  "Punitive damages serve to punish the defendant for wrongful

14 conduct and to deter the defendant and others from repeating the wrong." <u>Id.</u> at 810.  The plaintiff

15 has the burden of proving what, if any, punitive damages should be awarded by a preponderance of

16 the evidence, <u>Id.</u> at 807, and an award of punitive damages is predicated on the plaintiff proving that

17 the defendant's conduct was malicious, wanton, or oppressive, or in reckless disregard of the

18 plaintiff's rights, <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625 (1986); <u>Dang</u> at 807-09.

19         **3.**    **Damages for Mental/Emotional Injuries - Physical Injury Requirement**

20        The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought

21 by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury

22 suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The

23 physical injury "need not be significant but must be more than *de minimis*." <u>Oliver</u>, 289 F.3d at 627.

24 The physical injury requirement applies only to claims for mental or emotional injuries and does not

25 bar claims for compensatory, nominal, or punitive damages.  <u>Id</u>. at 630.

26       **G.**    **Federal Rules of Evidence**

27        Federal Rules of Evidence 608 and 609 provide that evidence of a witness' prior felony

28 conviction or instance of conduct demonstrating a propensity to lie may be used to impeach that

witness' testimony.[3]  Federal Rule of Evidence 404(b) provides that evidence of prior crimes, wrongs, or acts cannot be used to prove the character of the person in order to show conduct in conformity with that character trait.  Such prior acts may be admissible for other purposes only, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Id.

## VI.   Abandoned Issues

Neither party has abandoned any issues or abandoned any previously asserted affirmative defenses.

## VII.   Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

### A.   Plaintiff's Witnesses

1.   Himself, Latwahn McElroy (P-71922)[4]

### B.   Defendants' Witnesses[5]

1.   B. Cope (Defendant)

2.   R. Cox (Defendant)

3.   T. Acosta (Defendant)

---

[3]On March 9, 2012, Plaintiff filed a motion in limine to exclude evidence of his juvenile, criminal, CDCR administrative reports and other reports which are irrelevant to the claims in this action.  (Doc. 108.)  The Court granted Plaintiff's motion at the telephonic trial confirmation hearing held on May 10, 2012, with the exception of evidence that Plaintiff was convicted of a felony, which may be offered at trial by Defendants for purposes of impeachment.

[4]On March 19, 2012, Plaintiff filed a motion for the issuance of two Writs of Habeas Corpus Ad Testificandum, to transport Plaintiff and an inmate witness to trial.  (Doc. 114.)  The Court granted the motion for a Writ to transport Plaintiff, and denied the motion for a Writ to transport the inmate witness, at the telephonic trial confirmation hearing held on May 10, 2012.

[5]Defendants are not required to call all of the witnesses listed.  However, as has been the Court's general practice in cases such as this, witnesses the defense plans to call shall be present and available for Plaintiff to call for direct examination.

13

4.      R. Robles (Defendant)

5.      M. Hankins (Defendant)

6.      S. Stinnett (Defendant)

7.      S. Bryant

8.      B. Hancock

9.      Dr. M. Spaeth

## VIII.   Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

### A.    Plaintiff's Exhibits

1.      CCR Title 15 Regulations - Responsibility of employees and unnecessary force; Photographs which resulted; and CDCR Form 7227.

2.      Medical physicians order forms before during and after which restrict bending and squatting.

3.      Title 15 section 3354 of healthcare responsibilities and limitations (a) authorized staff.  Only such staff can perform healthcare services.

4.      Notes Defendant Hankins' gross miscalculation of Plaintiff's injuries which are falsified and/or left undocumented along with the head injuries on photographs.

5.      Defendants' reports under false pretenses glossed over to make defendant appear under a halo.

6.      Two contradictory reports by defendants Acosta and Rocha.

7.      Four-year time loss on the SHU assessment chart and the segregation lock-up order - 114-d.

///

8.    The grievance in which defendants prevaricated and attempted to block out Plaintiff's First Amendment rights to grieve the assault and his attempt to seek restoration of credits.

9.    The Kings County Superior Court telephonic appearance scheduled February 13, 2007 of case no. 06C0158.

10.   CDCR 128 C3 Form that shows grave disability and psychological distress.

11.   A recap of Plaintiff's opposition to Defendants' motion for summary judgment.

12.   Plaintiff's efforts to exhaust his administrative remedies with Log# SAC 10-10-11868; (a) the court order update on chronos and medications, and (b) the update chrono itself.

13.   Estimates of costs and fees which occurred out of pocket by Defendants beginning 11-26-07 which occurred from the case 06C0158 Kings County.

**B.    Defendants' Exhibits**

1.    Three color photographs of Defendant Cox, taken February 5, 2007.

2.    Rules Violation Report log no. FB-07-02-001.

3.    Medical Report of Injury or Unusual Occurrence for Defendant Cox, dated February 5, 2007.

4.    Medical Report of Injury or Unusual Occurrence for Plaintiff, dated February 5, 2007.

5.    CDC 128-B, dated July 11, 2007.

6.    Plaintiff's Probation Report, Court Case No. YA046991, dated February 22, 2001.

7.    Plaintiff's Abstract of Judgment, filed July 30, 2003.

8.    CDC 1845 Disability Placement Program Verification, dated July 10, 2007.

9.    Physician's Orders, dated July 13, 2007.

**IX.    Discovery Documents To Be Used At Trial**

Defendants intend to use portions of Plaintiff's deposition transcript dated December 2, 2010.

**X.**   **Further Discovery or Motions**

Further Discovery:   Discovery is closed.

Further Motions:

1.   Defendants have been granted leave to file a notice of substitution of parties, seeking to substitute the appropriate defendant LVN M. Hankins for the incorrect "Hankins."[6] The incorrect "Hankins" (a Hankins who is not an LVN) was served in this case, and the appropriate Hankins has now consented to representation by the A.G. and is willing to be substituted in.   Defense counsel will sign a Waiver of Service of Summons for LVN M. Hankins and represent her at trial.

2.   Plaintiff was granted leave at the telephonic trial confirmation hearing held on May 10, 2012 to renew his motion for the attendance of inmate witnesses.   However, to allow sufficient time for the Court to arrange transportation of such witnesses, Plaintiff must file the renewed motion, in compliance with the Court's Fourth Scheduling Order, on or before **May 28, 2012.**

Even though discovery is closed, all parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer in a previous response is incomplete or incorrect.   Fed. R. Civ. P. 26(e)(2).

**XI.**   **Stipulations**

The parties have reached the following stipulations for pretrial or trial purposes.

1.   The parties have stipulated to the Undisputed Facts as set forth in Section III of Defendants' Pretrial Statement and also set forth in Section III.A. of this Pretrial Order.[7]

///

///

---

[6]Defendants were granted leave at the telephonic trial confirmation hearing held on May 10, 2012, to file the described notice of substitution of parties.  Plaintiff indicated non-opposition on the record.

[7]The parties so stipulated on the record at the telephonic trial confirmation hearing held on May 10, 2012.

2.      The parties have stipulated to the authenticity of Plaintiff's inmate records identified in Section XI of Defendants' Pretrial Statement and also set forth in Section VIII.B. of this Pretrial Order.[8]

*CAUTION*:  Counsel are cautioned that if any stipulation is obtained in the future, it must be in writing, and must be provided to the Courtroom Deputy Clerk no later than **June 8, 2012.**

## XII.    Amendments/Dismissals

None.

## XIII.   Settlement Negotiations

The parties do not believe that settlement negotiations would be helpful at this time.

## XIV.    Agreed Statement

Defendants are willing to prepare an agreed statement of the case.

## XV.    Separate Trial Of Issues

Plaintiff requests a separate trial on damages.  Defendants request a separate trial regarding whether Plaintiff is entitled to punitive damages.

## XVI.    Impartial Experts - Limitation Of Experts

The Court shall not appoint an impartial expert for trial.

## XVII.    Attorney's Fees

Defendants will pursue attorney's fees if successful at trial, pursuant to 42 U.S.C. § 1988 and Local Rules 292 and 293.  A pro se litigant cannot be compensated under a federal statute for attorney's fees. Kay v. Ehrler, 499 U.S. 432, 435-37 (1991).  Thus, even if Plaintiff prevails, he will not be entitled to attorney's fees.

## XVIII. Further Trial Preparation

### A.    Motions In Limine Hearing and Briefing Schedule

Any party may file a motion in limine, which is a procedural mechanism to limit in advance testimony or evidence in a particular area.  U.S. v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009) (quotation marks omitted).  In the case of a jury trial, the Court's ruling gives Plaintiff and

---

[8] The parties so stipulated on the record at the telephonic trial confirmation hearing held on May 10, 2012.

17

1   Defendants' counsel advance notice of the scope of certain evidence so that admissibility is settled

2   before attempted use of the evidence before the jury. Id. at 1111-1112 (quotation marks omitted).

3       All motions in limine must be served on the other party, and filed with the Court, by **May**

4   **28, 2012**.  Any motion in limine must clearly identify the nature of the evidence that the moving

5   party seeks to prohibit the other side from offering at trial.

6       Any opposition to a motion in limine must be served on the other party, and filed with the

7   Court, by **June 8, 2012**.

8       If any party files a motion in limine, the Court will hear and decide such motions on the

9   morning of trial.

10      **Whether or not a party files a motion in limine, that party may still object to the**

11  **introduction of evidence during the trial.**

12      **B.    Other**

13      The parties are relieved of their obligation under Local Rule 285 to file trial briefs.  If they

14  wish to file trial briefs, they must do so on or before **June 8, 2012**.

15      The Court will prepare the verdict form, which the parties will have the opportunity to review

16  on the morning of trial.  If the parties wish to submit a proposed verdict form for consideration, they

17  must do so on or before **June 8, 2012**.

18      The Court will prepare the jury instructions, which the parties will have the opportunity to

19  review on the morning of trial.  Defendants shall file proposed jury instructions as provided in Local

20  Rule 163 on or before **June 8, 2012**.  If Plaintiff wishes to file proposed jury instructions, he must

21  do so on or before **June 8, 2012**.

22      In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury

23  Instructions to the extent possible.  All jury instructions must be submitted in duplicate: One set will

24  indicate which party proposes the instruction, with each instruction numbered or lettered, and

25  containing citation of supporting authority, and the customary legend, i.e., "Given, Given as

26  Modified, or Refused," showing the Court's action, with regard to each instruction.  One set will be

27  an exact duplicate of the first, except it will not contain any identification of the party offering the

28  instruction or supporting authority or the customary legend of the Court's disposition.  Defendants

shall provide the Court with a copy of their proposed jury instructions via e-mail at: ljoorders@caed.uscourts.gov.

Proposed voir dire questions, if any, shall be filed on or before **June 8, 2012**. Local Rule 162.1.

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **June 8, 2012**. The Court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

The original and two copies of all trial exhibits along with exhibit lists shall be submitted to Courtroom Deputy Irma Munoz no later than **June 8, 2012**. All of Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). All of Defendants' exhibits shall be pre-marked with the prefix "DX" and lettered sequentially beginning with A (e.g., DX-A, DX-B, etc.).

Any party wishing to use a recording (audio tape, DVD, VHS, etc.) for any purpose during trial shall lodge a copy of the recording with Courtroom Deputy Irma Lira by **June 8, 2012**. If a written transcript of audible words from the recording is available, the Court requests that the transcript be lodged with the Court, solely for the aid of the Court.

If counsel intends to use a laptop computer for presentation of evidence or intends to use any other audio/visual equipment belonging to the Court, he or she shall contact Courtroom Deputy Irma Munoz at least one week prior to trial so that any necessary arrangements and/or training may be scheduled.

**XIX.   Objections to Pretrial Order**

Any party may, on or before **June 8, 2012**, file and serve written objections to any of the provisions of this Order. Such objections shall specify the requested modifications, corrections, additions or deletions. If amendments to this Order result from any objections, an Amended Pretrial Order will be issued.

///

///

1   **FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS**

2   **FOR THE IMPOSITION OF SANCTIONS ON ANY AND ALL COUNSEL AS WELL AS**

3   **ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER**

4   IT IS SO ORDERED.

5   **Dated:    May 17, 2012**                              /s/ Lawrence J. O'Neill
                                                    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28